IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL W.,[1]                                      )
                                                    )
                        Plaintiff,                  )
                                                    )
v.                                                  )   Case No. 24-cv-2497-RJD[2]
                                                    )
COMMISSIONER of SOCIAL SECURITY,                    )
                                                    )
                        Defendant.                  )
                                                    )

## ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in May 2022, alleging an onset date of October 1, 2020. Tr. 17. After holding an evidentiary hearing on March 28, 2024, ALJ Robert Luetkenhaus denied the application. Tr. 17, 28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff filed a timely Complaint with this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Docs. 10, 20.

Page **1** of **9**

**Issues Raised by Plaintiff**

Plaintiff makes the following arguments:

1. The ALJ substituted his own lay opinion for medical expertise.

2. The ALJ's decision was not supported by substantial evidence.

3. The ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   A person is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work?   20 C.F.R. § 404.1520(a)(4).   An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability.   *Id.*

An applicant cannot receive disability benefits for drug addiction.   423 U.S.C. §423(d)(2)(C); *O'Kane v. Apfel*, 224 F.3d 686, 688 (7th Cir. 2000).   When the applicant has "both

a potentially disabling illness and is a substance abuser", the ALJ must determine whether the addiction is a contributing factor material to the determination of disability by considering 1) whether the claimant would still be disabled if he stopped using drugs; and (2) which of the claimant's physical and mental limitations would remain if he stopped using drugs and which of those remaining limitations would be disabling.  *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006).  20 C.F.R. §404.1535(b).  If the "remaining limitations would not be disabling", then the claimant's drug addiction is a contributing factor material to the determination of disability and he cannot receive benefits.  §404.1535(b)(i).

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted).  Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted).  However, the undersigned does not act as a rubber stamp for the Commissioner.  *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).  There must be a "logical bridge" between the ALJ's conclusion and the evidence.  *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

### The Decision of the ALJ

The ALJ followed the required five-step analytical framework.  He determined that

Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 1, 2020.   Tr. 19.   He determined that Plaintiff had the following severe impairments through the last date insured: major depressive disorder and polysubstance abuse.   Tr. 19.   He found that "even with [Plaintiff's] substance abuse" Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the applicable regulations.   Tr. 20.

The ALJ determined that, "based on all of the impairments, including the substance use disorder," Plaintiff had the following RFC:

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing only simple, routine, and repetitive tasks requiring only simple, work-related decisions;   few changes in the routine work setting; no more than occasional interaction with supervisors, coworkers, and the general public; and can maintain concentration to perform simple tasks, remember simple work-like procedures; and make simple work-related decisions.   The claimant will be absent from work more than three days per month and will be off task for more than 20% of the workday but otherwise can stay on task and, thereby, meet production requirements.

Tr. 22.   The ALJ concluded that Plaintiff was not capable of performing past relevant work and when "considering [Plaintiff's] age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed."   Tr. 23, 24.

However, the ALJ then found that if Plaintiff "stopped the substance abuse," he would not have an "impairment or combination of impairments that meets or medically equals the severity" of one of the listed impairments.   Tr. 25.   Without the substance abuse, Plaintiff had the same RFC except he would not be absent from work more than three days per month and would not be

off task for more than 20% of the workday.  Finally, he found that without the substance abuse, Plaintiff could not perform past relevant work, but "there have been jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 27.

## The Evidentiary Record

The following summary of the record is tailored to Plaintiff's arguments.

### 1.    Medical records

Plaintiff presented to Mercy Hospital South on May 26, 2020 for a chief complaint of "overdose."  He reporting that he had snorted fentanyl earlier that day.  Tr. 305.  He received Narcan, was admitted for observation, and discharged the next day.  Tr. 317.  At the time of discharge, he was alert, coherent, and orientated to time, person, and place.    Tr. 327.

Four days later, Plaintiff presented to Gateway Regional Medical Center, reporting that he had suicidal thoughts with a plan to overdose.  Tr. 254.  Plaintiff reported that he had been using fentanyl for the past 3-4 years.  Tr. 255.  He tested positive for oxycodone and marijuana and "was having withdrawals."  Tr. 255.  Plaintiff's mental status examination revealed that his judgment and insight were limited, intelligence was average, and his memory was intact.  Tr. 255. His diagnoses consisted of recurrent major depressive disorder with psychosis, opioid use disorder, and substance induced mood disorder.  Tr. 255.  Regarding the major depressive disorder, the physician noted that Plaintiff "was having some auditory visual hallucination, but he said that he is more like drug induced."  He had fair eye contact, was cooperative, and his affect was appropriate to his mood.  Tr. 255.  He received detox medication.  Tr. 252.  After staying in the closed psych unit for four nights, Plaintiff was discharged.  He was alert and oriented, his mood was pleasant, and his judgment and insight were improving.  Tr. 252.

### 2.      Agency Records

Plaintiff did not submit a written Function Report.   Tr. 22.

### 3.      Medical Source

Two physician consultants and one psychological consultant determined that there was insufficient evidence to offer opinions regarding Plaintiff, noting that Plaintiff "did not return the forms" and "no phone calls were returned."   Tr. 66, 67, 71, 72.

### 4.      Evidentiary Hearing

The ALJ conducted an evidentiary hearing on March 28, 2024.   Plaintiff was represented by an attorney.   Tr. 37.   Plaintiff testified that he lived with a friend and currently drove "a couple times a week" to restaurants or the grocery store. Tr. 44.   Plaintiff formerly worked as a truck driver and was honorably discharged from the Army.   Tr. 45.   In 2019, he fell at a gas station and twisted his knee.   Tr. 49.   He underwent two subsequent surgeries on his knee. Tr. 49.

Depression causes Plaintiff to be "down and out" and unable "to think straight." Tr. 53. He started seeing a doctor at the VA for depression approximately 6-7 months before the hearing. Tr. 54.   He feels nervous being around other people.   Tr. 56.   The ALJ asked Plaintiff "[w]hen's the last time you used any street drugs?" and Plaintiff answered "a week almost."   Tr. 54.   He took Oxycodone and Fentanyl.   Tr. 54.

The ALJ posed the following hypothetical to the vocational expert:

> An individual of [Plaintiff's age, education and work experience] who has no exertional limitations but…can perform only simple routine and repetitive tasks requiring only simple work-related decisions with few changes in a routine work setting.   And no more than occasional interaction with supervisors, coworkers, and the general public.   This individual can maintain the concentration required to perform simple tasks, remember simple work like procedures. And make simple work-related decisions and can stay

on task and thereby meet production requirements.

Tr. 59-60.

The vocational expert testified that there were jobs that existed in the national economy for this individual.   Tr. 60.   If the individual was absent from work three times per month on a regular basis, or if the individual was off task for at least 20% of the workday, the individual could not maintain competitive employment.   Tr. 60, 61.

### Analysis

The ALJ found that Plaintiff was precluded from receiving disability benefits because his drug addiction was a contributing factor material to the determination of disability.   There is a logical bridge between the evidence and this finding.   The records show that on the occasion Plaintiff received treatment for major depressive disorder, he had been engaging in substance abuse.

Plaintiff contends that this case must be remanded because the ALJ substituted his lay opinion for medical expertise when determining that Plaintiff's substance use was a contributing factor material to the determination of disability.   This argument fails because the record contains no medical expertise, apart from determinations by physicians in May and June 2020 that Plaintiff required in-patient treatment related to his substance abuse.   Plaintiff carried the burden of producing medical records that supported his claim of disability.   *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008).   The state agency physicians and psychologist could not render opinions because there was insufficient evidence.   Plaintiff's June 2020 records from Gateway Regional Medical Center reflect diagnoses of major depressive disorder *and* opioid use disorder, but otherwise there is no medical evidence reflecting treatment or evaluations for major depressive

Page **7** of **9**

disorder.

In support of his argument, Plaintiff cites two Seventh Circuit cases that were remanded because the ALJ "played doctor." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996).   In *McHenry*, the ALJ relied on his own lay interpretation of an MRI report; in *Rohan*, the ALJ did not explain why he disregarded the opinion of a physician.  *Id*.   Plaintiff asserts that the ALJ should have obtained an expert medical opinion to evaluate the severity of Plaintiff's impairments instead of "independently interpret[ing] raw medical data."   Apart from laboratory test results, the medical records do not contain "raw medical data" for the ALJ or an expert to interpret.   Regarding the laboratory test results, the ALJ did not "interpret" them but simply noted when Plaintiff's physician found that he had tested positive for oxycodone and marijuana.   Tr. 23, 254.

Plaintiff also contends that the ALJ "ignored extensive evidence in the record demonstrating that Plaintiff's severe psychiatric impairments persisted even during periods of sobriety."   This argument also fails.   There is *no* evidence in the record that demonstrates severe psychiatric impairments existing during periods of sobriety. The only brief period of sobriety in the record is the four-night hospitalization at Gateway Regional Medical Center from which Plaintiff was discharged with improving judgment and insight.   At the hearing, Plaintiff was given the opportunity to explain how his depression affected him when he was sober, but he provided no such explanation.   Tr. 42, 57.   Plaintiff testified that he was receiving treatment at the VA for his depression, but likewise did not provide any records of that treatment.   Tr. 37.

Finally, Plaintiff argues that the ALJ "failed to resolve apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles."   The vocational expert

opined that Plaintiff could perform certain jobs (industrial cleaner, laundry worker, and general factory helper) that, according to Plaintiff, "require consistent attention, pace, and attendance" but does not cite to the conflict in the Dictionary of Occupational Titles.  Regardless, the ALJ found that Plaintiff *could* maintain attention and pace, as well as attend work, if Plaintiff "stopped the substance abuse."

Overall, the ALJ's decision was supported by substantial evidence.  Plaintiff's arguments correlate to a record that does not exist.

## Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for a period of disability and disability insurance benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 27, 2026**

s/  *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**

Page **9** of **9**